UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERMOUNTAIN HEALTHCARE f/b/o<br>AMERICAN FORK HOSPITAL<br>170 North 1100 East<br>American Fork, UT 84003<br><br>and<br><br>INTERMOUNTAIN HEALTHCARE f/b/o<br>DIXIE REGIONAL MEDICAL CENTER<br>1380 South Medical Center Drive<br>St. George, UT 84790<br><br>and<br><br>INTERMOUNTAIN HEALTHCARE f/b/o<br>INTERMOUNTAIN MEDICAL CENTER<br>5121 South Cottonwood Street<br>Murray, UT 84157<br><br>and<br><br>INTERMOUNTAIN HEALTHCARE f/b/o<br>LDS HOSPITAL<br>8th Avenue & C Street<br>Salt Lake City, UT 84143<br><br>and<br><br>INTERMOUNTAIN HEALTHCARE f/b/o<br>LOGAN REGIONAL HOSPITAL<br>500 East 1400 North<br>Logan, UT 84341<br><br>and<br><br>INTERMOUNTAIN HEALTHCARE f/b/o<br>MCKAY-DEE HOSPITAL<br>4401 Harrison Blvd.<br>Ogden, UT 84403 | Civil Action No. _____ |

and                                                        )
                                                           )
INTERMOUNTAIN HEALTHCARE f/b/o                             )
UTAH VALLEY REGIONAL MEDICAL                               )
CENTER                                                     )
1034 North 500 West                                        )
Provo, UT  84604                                           )
                                                           )
INTERMOUNTAIN HEALTHCARE f/b/o                             )
VALLEY VIEW MEDICAL CENTER                                 )
1303 North Main Street                                     )
Cedar City, UT  84721                                      )
                                                           )
and                                                        )
                                                           )
LEE MEMORIAL HEALTH SYSTEM                                 )
f/b/o LEE MEMORIAL HOSPITAL                                )
2776 Cleveland Avenue                                      )
Fort Myers, FL  33901                                      )
                                                           )
and                                                        )
                                                           )
LEE MEMORIAL HEALTH SYSTEM                                 )
f/b/o CAPE CORAL HOSPITAL                                  )
636 Del Prado Blvd.                                        )
Cape Coral, FL  33990                                      )
                                                           )
and                                                        )
                                                           )
LEE MEMORIAL HEALTH SYSTEM                                 )
f/b/o GULF COAST MEDICAL CENTER                            )
13681 Doctor's Way                                         )
Fort Myers, FL  33912                                      )
                                                           )
and                                                        )
                                                           )
PARK NICOLLET METHODIST                                    )
HOSPITAL                                                   )
6500 Excelsior Blvd.                                       )
St. Louis Park, MN  55426                                  )
                                                           )
and                                                        )
                                                           )

| | |
|---|---|
| CHARLESTON AREA MEDICAL CENTER<br>501 Morris St.<br>Charleston, WV 25301 | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| KATHLEEN SEBELIUS, Secretary, U.S. DEPARTMENT OF HEALTH and HUMAN SERVICES<br>200 Independence Avenue, SW<br>Washington, DC  20201 | )<br>)<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT

### I.  SUMMARY

1.      Plaintiffs are non-profit organizations that own and operate acute care hospitals ("Plaintiffs") participating in the Medicare program.  Plaintiffs bring this complaint for judicial review of errors in the rural floor budget neutrality adjustment factor ("RFBN Adjustment"), calculated annually by the Secretary of the Health and Human Services ("HHS") as a part of the Inpatient Prospective Payment System ("IPPS") rates regulations.  These errors resulted in underpayments of funds due to Plaintiffs for inpatient services provided under the Medicare program for their fiscal years ending ("FYEs") in 2007 and 2008, corresponding to federal fiscal years ("FYs") 2007 and 2008.

2.      Because the D.C. Circuit, in *Cape Cod Hospital v. Sebelius*, has already reviewed and found errors with HHS's final rules setting the RFBN Adjustments for FYs 2007 and 2008, HHS's failure to correct its underpayments to Plaintiffs is contrary to law. *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203 (D.C. Cir. 2011) ("*Cape Cod*").

3.      *Cape Cod* summarized the mechanics of the RFBN Adjustment and HHS's

errors in computing the same.  In 1997, as part of the Balanced Budget Act of 1997

("BBA"), Congress amended the Medicare Act to correct an anomaly under which "the

way area wage indexes [had been] applied [had] resulted in some urban hospitals being

paid less than the average rural hospital in their states."  *Id.* at 206 (quoting H.R. Rep. No.

105-149, at 1305 (1997)).  Thus, in the BBA, Congress mandated that the wage index for

rural hospitals in a state would be the "floor" for the wage index for urban hospitals in the

same state – *i.e.* all urban hospitals would be assigned wage indices at least as great as the

wage index assigned to rural hospitals within the same state.  BBA § 4410(a), Pub. L. No.

105-33, 42 U.S.C. § 1395ww note (the "Rural Floor Statute").  This statutory requirement

is known generally as the "Rural Floor."  Congress also mandated that the Rural Floor be

implemented so as to have a budget neutral effect on Medicare reimbursements to all

hospitals, and directed HHS to adjust the wage index "in a manner which assures that the

aggregate payments made . . . are not greater or less than those which would have been

made" if the rural floor did not apply.  *Id.* at § 4410(b).  HHS's annual adjustment to

achieve the requisite budget neutrality is called the Rural Floor budget neutrality factor (the

"RFBN Adjustment").

4.      In *Cape Cod*, the plaintiff hospitals challenged the RFBN Adjustments for

FYs 2007 and 2008, the same FYs as those at issue in the instant case.  The D.C. Circuit

held that HHS had failed to respond to a relevant and significant public comment when it

issued the FY 2007 final RFBN Adjustment rule.  *Cape Cod*, 630 F.3d at 211.  The D.C.

Circuit then rejected HHS's arguments that its FY 2008 final rule was consistent with the

Rural Floor Statute.  *Id.* at 216.  Specifically, the D.C. Circuit Court held that the Rural

Floor Statute does not permit HHS to ignore prior errors that the agency had made in calculating the RFBN Adjustments.  Finally, the D.C. Circuit remanded the case to the "[Centers for Medicare and Medicaid Services ("CMS")] either to explain why reversing all prior [RFBN] adjustments was unnecessary to achieve budget neutrality in 2008 or, if it can provide no explanation beyond the finality concern [which the D. C. Circuit has] rejected [], to recalculate the payments due the hospitals under a formula that removes the effects of the prior [RFBN] adjustments."  *Id.*; *see also*, *id.* at 213 ("Having built the past into the cumulative methodology it chose for counteracting the budgetary impact of the rural floor, CMS may not now ignore past errors that have the effect of overly deflating current aggregate payments in violation of BBA section 4410(b)'s budget-neutrality mandate.").

5.      The D.C. Circuit directed the District Court to "(1) vacate those portions of the 2007 and 2008 rules challenged in this suit, and (2) remand to the Secretary for further proceedings consistent with this opinion."  *Id.* at 216.

6.      HHS and CMS have still not implemented the D.C. Circuit's instructions on remand.  In the meantime, Plaintiffs were underpaid in their FYEs 2007 and 2008, due to HHS's erroneous FYs 2007 and 2008 RFBN Adjustments, and those underpayments violate the mandate of the Rural Floor Statute.

7.      Furthermore, HHS has yet to publish corrections to its errors in accordance with the D.C. Circuit's mandates in *Cape Cod* (for FYs 1997 through 2011) and has refused to make any retroactive corrections to the RFBN Adjustments for FYs prior to FY 2012.  *See* 72 Fed. Reg. 47,130, 47,330 (Aug. 22, 2007) ("With regard to alleged errors in FYs 1999 through 2007, our calculation of budget neutrality in past fiscal years is not

within the scope of this rulemaking.  Even if errors were made in prior fiscal years, we would not make an adjustment to make up for those errors when setting rates for FY 2008. It is our longstanding policy that finality is critical to a prospective payment system. Although errors in rate setting are inevitable, we believe the need to establish final prospective rates outweighs the greater accuracy we might gain if we retroactively recomputed rates whenever an error is discovered.").  *See also*, 76 Fed. Reg. 51,476, 51,825 (Aug. 18, 2011) (providing that, in response to *Cape Cod*, HHS was finally restoring to the FY 2012 standardized amount the offsets that had been made for the erroneous RFBN Adjustments in FYs 1998 through 2006, but not addressing the underpayments for FYs before FY 2012).

8.      However, on or around April 5, 2012, notwithstanding its prior public refusals to make retroactive corrections, HHS agreed to pay out more than $3 billion to approximately two thousand hospitals in settlement of claims based on its erroneous RFBN Adjustments.  These settlement payments were retroactive and included FYs reaching as far back as FY 1999.

9.      Based on the Rural Floor Statute, this Circuit's *Cape Cod* decision and HHS's subsequent admissions that retroactive corrections were necessary, it is beyond dispute that HHS improperly calculated the RFBN Adjustments and, as to the Plaintiffs, underpaid them by using erroneous rates and amounts of inpatient hospital payments due for services provided under the Medicare program for their FYEs 2007-2008.  Plaintiffs contend that HHS's underpayments, and the RFBN Adjustment regulations on which they were based, are contrary to the Rural Floor Statute and are otherwise in violation of the APA for multiple reasons.

10.     The *Cape Cod* decision has already established HHS's errors, and HHS has since admitted the same in the Federal Register.  *See* 76 Fed. Reg. 51,788-9.

11.     Therefore, Plaintiffs respectfully seek the entry of an order: (1) finding that the RFBN Adjustments used to calculate Plaintiffs' IPPS payment for FYEs 2007 and 2008 were inconsistent with the Rural Floor Statute, were arbitrary and capricious, and/or otherwise inconsistent with the law; (2) directing HHS to recalculate, correct, and pay Plaintiffs the additional sums due from recalculating the RFBN Adjustments and correcting the standardized amounts for FYs 2007 and 2008, plus interest in accordance with 42 U.S.C. § 1395oo(f)(2) and/or any other applicable law.

## II.     PARTIES

12.     Plaintiffs are non-profit organizations that, directly or through wholly owned subsidiaries, own and operate the acute care hospitals identified in the subparagraphs below.  Each Plaintiff has been certified to and has participated in the Medicare program as a "provider of services" during the time relevant to this Complaint, including, with respect to each hospital, during each of the fiscal years identified below.

    a.   Plaintiff, American Fork Hospital ("American Fork"), a part of the Intermountain Healthcare system, is a non-profit organization located in American Fork, Utah.  American Fork is appealing its IPPS payments by HHS for the fiscal year that ended on December 31, 2007.

    b.   Plaintiff, Dixie Regional Medical Center ("Dixie Regional"), a part of the Intermountain Healthcare system, is a non-profit organization located in St. George, Utah.  Dixie Regional is appealing its IPPS

payments by HHS for the fiscal year that ended on December 31, 2007.

c.  Plaintiff, Intermountain Medical Center ("Intermountain"), a part of the Intermountain Healthcare system, is a non-profit organization located in Murray, Utah.  Intermountain is appealing its IPPS payments by HHS for the fiscal year that ended on December 31, 2007.

d.  Plaintiff, LDS Hospital ("LDS"), a part of the Intermountain Healthcare system, is a non-profit organization located in Salt Lake City, Utah.  LDS is appealing its IPPS payments by HHS for the fiscal year that ended on December 31, 2007.

e.  Plaintiff, Logan Regional Hospital ("Logan Regional"), a part of the Intermountain Healthcare system, is a non-profit organization located in Logan, Utah.  Logan Regional is appealing its IPPS payments by HHS for the fiscal year that ended on December 31, 2007.

f.  Plaintiff, McKay-Dee Hospital ("McKay-Dee"), a part of the Intermountain Healthcare system, is a non-profit organization located in Ogden, Utah.  McKay-Dee is appealing its IPPS payments by HHS for the fiscal year that ended on December 31, 2007.

g.  Plaintiff, Utah Valley Regional Medical Center ("Utah Valley"), a part of the Intermountain Healthcare system, is a non-profit

organization located in Provo, Utah.  Utah Valley is appealing its IPPS payments by HHS for the fiscal year that ended on December 31, 2007.

h.  Plaintiff, Valley View Medical Center ("Valley View"), a part of the Intermountain Healthcare system, is a non-profit organization located in Cedar City, Utah.  Valley View is appealing its IPPS payments by HHS for the fiscal year that ended on December 31, 2007.

i.  Plaintiff, Lee Memorial Hospital ("Lee Memorial"), a part of the Lee Memorial Health System, is a non-profit organization located in Fort Myers, Florida.  Lee Memorial is appealing its IPPS payments by HHS for the fiscal years that ended on September 30, 2007 and 2008.

j.  Plaintiff, Cape Coral Hospital ("Cape Coral"), a part of the Lee Memorial Health System, is a non-profit organization located in Cape Coral, Florida.  Cape Coral is appealing its IPPS payments by HHS for the fiscal years that ended on September 30, 2007 and 2008.

k.  Plaintiff, Gulf Coast Medical Center ("Gulf Coast"), a part of the Lee Memorial Health System, is a non-profit organization located in Fort Myers, Florida.  Gulf Coast is appealing its IPPS payments by HHS for the fiscal year that ended on September 30, 2007.

l.  Plaintiff, Park Nicollet Methodist Hospital ("Park Nicollet"), is a non-profit organization located in St. Louis Park, Minnesota.  Park Nicollet is appealing its IPPS payment by HHS for its fiscal year that ended on December 31, 2007.

m.  Plaintiff, Charleston Area Medical Center ("CAMC"), is a non-profit organization located in Charleston, West Virginia. CAMC is appealing its IPPS payment by HHS for its fiscal year that ended on December 31, 2007.

13.  Defendant Kathleen Sebelius is the Secretary of HHS and is sued in her official capacity.

### III.  JURISDICTION AND VENUE

14.  This Court has jurisdiction under 42 U.S.C. § 1395oo(f), which provides jurisdiction for appeals of Medicare payment decisions, under the applicable provisions of chapter 7 of title 5, United States Code, the Administrative Procedure Act ("APA").

15.  Each of Plaintiffs' appeals meets all the jurisdictional requirements under 42. U.S.C. § 1395oo in that: (1) Plaintiffs are dissatisfied with their total amount of Medicare reimbursements; (2) the minimum amount in controversy exceeds $50,000; and (3) all Plaintiffs timely filed appeals after receiving their Notice of Program Reimbursement.

16.  Venue is proper in this Court under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391(c).

17.  Acting on behalf of HHS, the CMS Administrator issued the final decisions of the agency on Plaintiffs' administrative appeals determining that the Provider

Reimbursement Review Board (the "Board") had jurisdiction over Plaintiffs' appeals and

acknowledged the Board's decision that the issue presented in the appeals qualify for

expedited judicial review. The CMS Administrator's decisions are subject to judicial

review. 42 U.S.C. § 1395oo(f).

18.     Plaintiffs filed this action within 60 days after receipt of HHS's final

decisions on their administrative appeals; thus, this action is timely under 42 U.S.C. §

1395oo(f).

### IV.     STATUTORY, REGULATORY, AND FACTUAL BACKGROUND UNDERLYING PLAINTIFFS' CLAIMS

### A.     The Medicare Program, IPPS Payments, and the RFBN Adjustments

19.     The Medicare program, established as title XVIII of the Social Security

Act, 42 U.S.C. § 1395 *et seq.*, is the federal entitlement program that provides health care

insurance to the nation's aged and disabled. Since 1983, Congress has required HHS to

implement a prospective payment system under which hospitals would receive a fixed

payment for inpatient services.

20.     HHS administers the Medicare program. CMS is a component of HHS and

is responsible for the daily operation and administration of the Medicare program.

21.     To calculate the prospective payment rates, CMS begins with a figure

called the "standardized amount," which approximates the average cost incurred by

hospitals nationwide for each patient they treat and then discharge. *See* 42 U.S.C. §

1395ww(d)(2). This serves as the base payment rate per discharge under IPPS. 42 U.S.C.

§ 1395ww(d)(3).

22.    CMS does not recalculate the standardized amount from scratch each year. Instead, following Congress's directive, having calculated a base year standardized amount, CMS annually inflates that amount for the coming FY.

23.    Each year, the standardized amount (as inflated) is then multiplied by a "wage index" that reflects the variance in labor costs between the local average of hospital wages and the national average of hospital wages.  42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E).  CMS calculates the wage index anew each year.

24.    The standardized amount is further modified to account for other factors that cause variance in hospitals' costs for treating inpatients.  These other factors are not pertinent to the present challenge.

25.    In 1997, Congress passed the BBA, which amended the Medicare Act, in part, to address "an anomaly" where the area wage indexes resulted in some urban hospitals being paid less than the average rural hospital in their states.  H.R. Rep. No. 105-149, at 1305 (1997).  Specifically, the BBA states, in part:

> (a) IN GENERAL. – For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) for discharges occurring on or after October 1, 1997, the area wage index applicable under such section to any hospital which is not located in a rural area . . . may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located.

> *Id.*

26.    This provision of the BBA is commonly referred to as the Rural Floor.  72 Fed. Reg. 24,680, 24,786 (May 3, 2007) ("Section 4410 of Pub. L. 105-33 provides that the area wage index applicable to any hospital that is located in an urban area of a State may

not be less than the area wage index applicable to hospitals located in rural areas of that

State . . . .").

27.     Furthermore, the BBA mandated that HHS implement the Rural Floor in

such a manner as would have no effect on the annual total of IPPS payments made to all

hospitals throughout the country (*i.e.*, it would be "budget neutral").  The Rural Floor

Statute states:

> (b) IMPLEMENTATION.  – The Secretary of Health and Human
> Services shall adjust the area wage index . . . in a manner which
> assures that the aggregate payments made under [the PPS] in a fiscal
> year for the operating costs of inpatient hospital services are not
> greater or less than those which would have been made in the year if
> this section did not apply.

> BBA § 4410(b).

28.     HHS purports to maintain budget neutrality through the annual setting of

the RFBN Adjustment which is at the center of this case.  However, as the D.C. Circuit

stated in *Cape Cod* and as subsequently admitted by the agency, HHS calculated the RFBN

Adjustments for FYs 2007 and 2008 in a manner that produced aggregate IPPS payments

that were <u>less</u> than the amount that would have been paid if the rural floor had not been

applied (*i.e.* in a manner that was <u>not</u> budget neutral), thus violating the express mandate of

the Rural Floor Statute.

**B.       HHS's Flawed Calculation of the RFBN Adjustment Factors**

29.     Prior to FY 2008, HHS stated that it accounted for the effect of the Rural

Floor through a cumulative adjustment to the standardized amount.  In theory, in the first

year of the Rural Floor, the RFBN Adjustment would reduce the standardized payment rate

to offset the total projected increase in payment that otherwise would result from the

application of the Rural Floor to the Wage Index.  This decrease in the standardized

amount would maintain budget neutrality, *i.e.*, maintain the aggregate Medicare IPPS payments to all hospitals at the same level as if Congress had not required a Rural Floor. For subsequent years, the RFBN Adjustment was supposed to account only for the incremental change, if any, which resulted from the impact of the Rural Floor from one year to the next.  *See*, 71 Fed. Reg. at 48,147 ("We do not remove the prior year's budget neutrality adjustments . . . for updated wage data").

30.     In reality, however, HHS annually committed a basic mathematical error in calculating the RFBN Adjustment.  Instead of accounting only for the incremental impact of the Rural Floor in each of the years since FY 1998, HHS reduced the standardized amount in a manner that reflected the full cumulative effect of the Rural Floor Adjustment for all previous years, not just the incremental (marginal) change from the prior FYs to the FY at issue.  As a result, each RFBN Adjustment made from FYs 1998 to 2007 improperly duplicated (compounded) prior-period adjustments made for the effect of the Rural Floor in all prior years.  *See* 76 Fed. Reg. at 51,788-9.

31.     By way of explaining HHS's cumulative errors in calculating the annual RFBN Adjustments, the D.C. Circuit in *Cape Cod* offered a simple example:

> Imagine an employee normally earns $10 per hour. His employer decides to give him a company car, the value of which equates to compensation of $1 per hour. To avoid an increase in the employee's overall compensation — *i.e.,* to achieve "budget neutrality" — the employer reduces the employee's wage to $9 per hour. Now imagine that next year, the employee receives a nicer car worth $2 per hour. To calculate what the employee's wage should then be to keep his overall compensation at $10 per hour, the employer could use either a cumulative or noncumulative approach. Under the cumulative method, the employer would subtract the $1 incremental increase in the value of the car from the employee's current wage of $9 to arrive at a new, budget-neutral wage of $8. Under the noncumulative approach, the employer would simply subtract the full value of the car ($2) from the desired total compensation ($10) to arrive at the

same figure — a wage of $8 per hour. But it would make no sense for the employer to subtract the full $2 value of the new car from the employee's current $9 wage and thus pay him only $7 per hour. Doing so would not be "budget neutral" — it would reduce the employee's total compensation by $1 per hour. Yet this is essentially what the hospitals accuse CMS of doing in calculating the annual budget neutrality adjustment to account for the rural floor. Specifically, the hospitals argue that CMS has duplicated prior adjustments by each year calculating the full amount of the adjustment necessary to counteract the effect of the rural floor and then applying that adjustment to a figure that includes adjustments carried over from previous years.

*Cape Cod*, 630 F.3d at 207.

32.     During the FY 2007 rulemaking, a comment aptly identified this cumulative error in HHS's RFBN Adjustments.  *Id.* at 211.  HHS, however, failed to respond to this comment during notice and comment rulemaking, and later attempted to justify such failure by relying on a technical, procedural requirement for the time and place for submission of paper comments.  The D.C. Circuit rejected this justification.  *Id.* at 211-12.

33.     Thus, HHS was on notice of its errors in calculating the RFBN Adjustment for FY 2007.  Nevertheless, HHS knowingly promulgated the RFBN Adjustment for FY 2007 without correcting its cumulative math errors from FYs 1998 through 2006.

34.     The FY 2007 RFBN Adjustment produced aggregate IPPS payments that were less than the amount that would have been paid if the Rural Floor had not been applied, thus violating the plain language of the Rural Floor Statute.

35.     For FY 2008, HHS switched from making a cumulative RFBN Adjustment to the standardized amount to making a non-cumulative adjustment to the wage index.  In connection with this change, HHS made a "one-time 1.002214 adjustment [to the standardized amount for 2008 which was] meant to address a single year transition to a

noncumulative system of budget neutrality adjustment." 72 Fed. Reg. at 47,330. It did not, however, correct for the cumulative errors that HHS had made in "overly deflating current aggregate payments in violation of BBA section 4410(b)'s budget-neutrality mandate." *Cape Cod*, 630 F.3d at 216. In other words, the errors that HHS had made in FYs 1998 through 2007 remained in the deflated standardized amount, and the FY 2008 RFBN Adjustment still produced aggregate IPPS payments that were less than the amount that would have been paid if Rural Floor had not been applied, again violating the plain language of the Rural Floor Statute.

36.     The D.C. Circuit held that "the rationale that CMS did provide [for why it would not correct its prior errors when setting the FY 2008 RFBN Adjustment] – that its interest in finality justifies its refusal to revisit previously calculated [RFBN Adjustments] – fails on its own terms because BBA section 4410(b) does not permit the agency to ignore prior errors in calculating [RFBN Adjustment] when those errors are built into the formula used to calculate current Medicare payments." *Cape Cod*, 630 F.3d at 216.

37.     Recently, HHS has itself calculated the overall impact of its erroneous RFBN Adjustments to the standardized amount for FY 1998 through FY 2007. 76 Fed. Reg. at 51,788-9. HHS compared a remodeled recalibration of the RFBN Adjustments, which raised the standardized rates by the cumulative errors, against the RFBN Adjustments that were in effect and as applied to providers, HHS calculated an "approximately 0.1 percentage point increase between the factors for each year [from FY 1998 to FY 2004] . . . results in a total of 0.7 percentage point" which must be returned to the standardized amount. *Id.* at 51789. Then for FYs 2005 through 2006, HHS estimated the impact to be "approximately 0.2 percentage point per year. . . result[ing] in a total of 0.4

percentage points" which also must be returned to the standardized amount.  *Id.*  Finally, as previously calculated for FY 2008, the correction factor for the impact in FY 2007 was 1.002214.  *Id.*

## V.      FACTS SPECIFIC TO THE PLAINTIFFS' APPEALS

### A.      <u>Plaintiffs Pursued Administrative Hearing Appeals Before The Board.</u>

38.      With respect to each of the FYEs identified in paragraph 12 of the Complaint, Plaintiffs each exhausted their administrative remedies by pursuing administrative appeals in accordance with HHS's applicable rules and regulations.

39.      Pursuant to 42 U.S.C. § 1395oo, Medicare claims must be filed in the first instance to the Board.  The Board is an administrative tribunal, the members of which are appointed by HHS.  42 U.S.C. § 1395oo(h).

40.      Plaintiffs each timely filed appeals pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835(a)(3)(ii), as well as applicable Board Rules.  Within 180 days of receiving their Notices of Provider Reimbursement, each of the Plaintiffs appealed their RFBN Adjustment issue challenging the validity of HHS's regulations implementing the Rural Floor Statute and the resulting underpayments with respect to their inpatient hospital claims for FYEs 2007 and 2008.

41.      Pursuant to 42 U.S.C. § 1395oo, these individual appeals were combined into group appeals, in which the single common issue raised was whether the RFBN Adjustment, as promulgated and implemented by HHS, and as in effect for the respective years appealed, was contrary to the Rural Floor Statute and/or are otherwise substantively or procedurally invalid (the "Group Appeal").

42.     The Board is bound to apply the payment rates reflected in the annual IPPS rules.  *See*, 42 C.F.R. § 405.1867 ("the Board is bound by CMS regulations issued under Title XVII of the Act.").   Thus, 42 U.S.C. § 1395oo(f) provides that a hospital with a pending Board appeal "may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matter in controversy."

43.     Having received such a request for expedited judicial review ("EJR"), should the Board determine that it has jurisdiction over the appeal, but lacks the authority to decide the question of law presented, the hospital may commence a civil action in a court with proper venue within 60 days of the date on which the hospital received notification of the Board's determination.  *Id.*

44.     In each group appeal, Plaintiffs filed an EJR request pursuant to 42 U.S.C. § 1395oo(f)(1).

45.     On September 12, 2013, the Board issued similar decisions for all the Group Appeals and concluded that "it lack[ed] jurisdiction over the appeals because review of budget neutrality adjustments is expressly prohibited by the statute and regulations.  Because jurisdiction over an appeal is a prerequisite to granting a request for EJR, the Board finds that EJR is not appropriate."

46.     However, because HHS had adopted the contrary position in *Cape Cod*, *i.e.,* that the Board did have jurisdiction, the Board in the instant appeals went on to address the question of whether EJR would be appropriate, should HHS again take the position that the Board had jurisdiction.  Accordingly, the Board found that, assuming jurisdiction, the RFBN Adjustment issue properly fell within 42 U.S.C. § 1395oo(f)(1) and was appropriate for EJR.  *See*, Exhibit A.

47.     Pursuant to 42 C.F.R. § 405.1875, the CMS Administrator, on her own motion, decided to review the Board's decisions asserting lack of jurisdiction. *See*, Exhibit B.

48.     On November 26, 2013, the Administrator reversed each of the Board's jurisdictional decisions, finding that the Board did have jurisdiction to hear Plaintiffs' EJR requests.

49.     Each of the Administrator's reversals (on jurisdiction), when combined with the Board's affirmative rulings granting EJR, represent the final decision of HHS, which Plaintiffs now appeal to this Court.

50.     Plaintiffs have timely filed this appeal within 60 days of their receipt of HHS's final determinations.

## VI.    STANDARD OF REVIEW AND ASSIGNMENTS OF ERROR

51.     Section 1878(a) and (f) of the Medicare Act, 42 U.S.C. § 1395oo(a), (f), provide for review of HHS's determination of the IPPS payment rates at issue pursuant to the applicable provisions of the APA.  The applicable provisions of the APA require a reviewing court to set aside agency action that is found to be contrary to law, arbitrary, capricious, unsupported by substantial evidence, in excess of statutory authority or otherwise not in accordance with law.  5 U.S.C. § 706.

52.     The Court should find HHS's determinations of the standardized amount for FYs 2007 and 2008, and the RFBN Adjustments for those two years and for all prior years (after FY 1997), were (A) in excess of statutory authority, or limitations, or short of statutory right, (B) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law, (C) without observance of procedure required by law, and/or (D)

unsupported by substantial evidence, insofar as:

    a.    HHS's RFBN Adjustments violated the Rural Floor Statute because HHS

implemented the Rural Floor Statute in a manner that resulted in aggregate

IPPS payments that were less than the amount that would have been paid if

the Rural Floor had not been applied, and thus was not budget neutral;

    b.    HHS's determination and application of the RFBN Adjustment to the

standardized amount for FY 2007 was arbitrary and capricious, violated the

notice and comment rulemaking procedure mandated in 5 U.S.C. § 553, and

was otherwise contrary to law because: (1) HHS made errors in computing

the RFBN Adjustment for FY 2007 and all prior fiscal years (after FY

1997); (2) HHS failed to respond to a timely submitted comment for FY

2007 identifying the cumulative errors in its calculation; (3) despite being

on notice of its cumulative errors, HHS set the RFBN Adjustment for FY

2007 in a manner that repeated, and exacerbated the negative impact on

payments of, the same error; and (4) as a result, each of the Plaintiffs

received less in payments (for inpatient services) than they would have

received had the Rural Floor never been established;

    c.    HHS's determination and application of the RFBN Adjustment to the

standardized amount for FY 2008 was arbitrary and capricious, violated the

notice and comment rulemaking procedure mandated in 5 U.S.C. § 553, and

was otherwise contrary to law because: (1) HHS failed to provide

retroactive relief for the past FYs even though its prior RFBN Adjustments

were contrary to the Rural Floor Statute and, thus, invalid; (2) the one-time adjustment failed to reverse and restore to the standardized amount the total cumulative effect of all prior adjustments that had been made to the standardized amount during FYs 1998-2007; (3) aggregate payments made (for inpatient services) under the IPPS for FY 2008 were less than those which would have been made if the Rural Floor had never been established;

d.      Despite having selectively provided retroactive corrections for the RFBN Adjustments errors for FYs prior to 2012 to more than two thousand hospitals (but not to Plaintiffs), and despite having recently calculated the impact of such errors in the FY 2012 IPPS Rates Regulation (76 Fed. Reg. at 51,788-9), HHS continues to refuse to provide such retroactive corrections to Plaintiffs, which action is arbitrary and capricious and otherwise contrary to the law; and

e.      HHS's failure to correct its past mistakes in the RFBN Adjustment violates the mandate of the D.C. Circuit in *Cape Cod* and is inconsistent with HHS's admissions from and after FY 2008 as to the nature and extent of its errors.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter an order:

1.      Invalidating HHS's RFBN Adjustments for FYs 2007 and 2008;

2.      Requiring HHS to recalculate, correct, and pay Plaintiffs the additional sums due them, as result of such recalculation and correction of the RFBN Adjustments;

3.      Awarding Plaintiffs interest under 42 U.S.C. § 1395oo(f)(2) and/or any other applicable law;

4.      Awarding Plaintiffs their attorney fees and costs for prosecution of this

appeal as permitted under any applicable law; and

5.      Granting Plaintiffs such further and additional relief as may be just and

warranted.


Respectfully submitted this 24th day of January, 2014.


By:     */s/ Stephen P. Nash*
        Stephen P. Nash (D.C. Bar #PA0037)
        PATTON BOGGS LLP
        1801 California, Suite 4900
        Denver, CO  80202
        Tel.: (303) 830-1776
        Fax: (303) 894-6173
        E-mail: snash@pattonboggs.com

        Counsel for Plaintiffs